**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FELTON AND LUCILLE BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3748** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Allstate Insurance Company's  motion for partial

summary judgment on claims for uncompensated losses is **DENIED**.  (Document #18.)

**IT IS FURTHER ORDERED** that Allstate Insurance Company's motion for partial

summary judgment on claims under Louisiana Value Policy Law is **GRANTED**.  (Document

#19.)

**IT IS FURTHER ORDERED** that Allstate Insurance Company's motion for partial

summary judgment on whether the pre-amendment version of La. Rev. Stat. 22:658 applies is

**GRANTED IN PART AND DENIED IN PART**.  (Document #20.)

**IT IS FURTHER ORDERED** that Allstate Insurance Company's motion *in limine* to

strike Brice Egaina as a witness because of untimely disclosure is **DENIED**.  (Document #24.)

**IT IS FURTHER ORDERED** that Allstate Insurance Company's motion *in limine* to

strike aspects of the plaintiffs' expert witness testimony as untimely is **DENIED**.  (Document #25.)

## I. BACKGROUND

The residence of Felton and Lucille Bradley, located at 2637 Tennessee Street, New Orleans, Louisiana, sustained flood and wind damage as a result of Hurricane Katrina.  The property was insured under a homeowner's policy issued by Allstate Insurance Company (Allstate) with policy limits of $105,600 for the dwelling, $73,920 for the contents, and $10,560 for other structures.  The Bradleys notified Allstate of their loss and filed a claim.  Allstate sent a representative to evaluate and adjust the loss.

Allstate has paid $41,339.06 for structural damage under a policy with a limit of $105,600.  The Bradleys viewed Allstate's calculation of the value of the loss as significantly less that the value of the damages and the necessary repairs. The Bradleys received the policy limits of $63,800 for structural damage, and $6,200 for contents from their flood insurer, Fidelity National Insurance Company.  Total payment received for structural damage under the homeowner's policy and flood policy thus far is $105,139.06.

The Bradleys filed a petition for damages and declaratory judgment in Civil District Court for the Parish of Orleans, State of Louisiana.  They allege that they are entitled to the total face amount of the policy without deduction or offset, pursuant to Louisiana Value Policy Law (VPL), La. Rev. Stat. 22:695; Allstate breached the contract; and Allstate acted in bad faith. Allstate removed the case to federal court based on diversity jurisdiction.  Allstate filed a motion for partial summary judgment on the issue of flood offset, a motion for summary judgment on

the Bradleys' claims under Louisiana Value Policy Law (VPL), and a motion for partial

summary judgment on the claims under La. Rev. Stat. 22:658.


## II. DISCUSSION

**A.  Summary judgment standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to

the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is

entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805,

809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce

evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548,

2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory

allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp.,

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B. Flood offset**

Allstate contends that the Bradley's are seeking recovery for the same loss under their

homeowner's policy for which they have been compensated under the flood policy.  Allstate

argues that they are alleging loss of property from wind damage for the same damage for which

they claimed flood coverage.  Allstate argues that the Bradleys have received in excess of the

actual cash value of their property from their flood and homeowners insurance and that they are

not entitled to further payments because they have been fully compensated for their structural

damage.  Allstate argues that, even if the Bradleys are entitled to further recovery under the

homeowner's policy, any recovery should be offset by the amount recovered under the flood

policy and previously recovered under the homeowner's policy to prevent impermissible double

recovery.

Insurance contracts against loss are contracts of indemnity.  See Black v. First City Bank,

642 So.2d 151, 155 (La. 1994).  An insured cannot recover an amount greater than the loss, and

no double recovery is permitted.  See Johnson v. State Farm Fire & Cas. Co., 2008 WL 2178059

(E.D. La. 2008).  "When an insured has already received compensation for the full value of his

or her property, he or she is not entitled to recharacterize as wind damage those losses for which

he or she has already been compensated by previously attributing them to flood waters."  Id.

(citing Wellmeyer v. Allstate Ins. Co., 2007 WL 1235042 at *3 (E.D. La. 2007)) (internal

quotation omitted).   "A plaintiff whose property sustains damage from flood and wind can

clearly recover for his or her segregable wind and flood damages except to the extent that he

seeks to recover twice for the same loss."  Id. (citing Weiss, 2007 WL 891869 at *2)).

"Plaintiffs are entitled to recover . . . any previously uncompensated losses that are covered by

the homeowner's policy and which when combined with their flood proceeds do not exceed the

value of their property."  Id.

The dispute turns on the value of the Bradleys' home.  The Bradleys contend that the

replacement cost of the structure after a total loss is $265,427.  The Bradleys support their

estimate with a report from Crescent City Adjusters.  They argue that, if they recovered the full

policy limits from both their flood and homeowners' policies, the total they would receive for the loss to the dwelling does not exceed the value of the property.

Allstate contends that there are no uncompensated losses because the pre-Katrina value of the home was $76,000. Allstate presents printed documents from The Road Home Program estimating the pre-storm value of the property at $76,000.

The evidence presented by the parties does not conclusively establish the value of the Bradleys' home. The documents presented by Allstate from The Road Home Program are incomplete and unsigned and are not reliable summary judgment evidence of the value of the home. The evidence provided by the Bradleys raises disputed issues of material fact as to whether the Bradleys seek a recovery of uncompensated, covered damage that does not exceed the value of their property.

Accordingly, although Allstate correctly states the law regarding double recovery, *i.e.* that the insured cannot recover twice for a single loss, the disputed issues of fact preclude partial summary judgment on the question whether the Bradleys have sustained uncompensated losses which, when combined with their flood proceeds, exceed the value of their property. Accordingly, Allstate's motion for partial summary judgment on the issue of uncompensated loss is denied.

## C.  VPL

The Bradleys allege that they suffered substantial damage to their residence and its contents, rendering it a total loss, and that they are entitled to recover the stated value of their property.

Allstate contends that Louisiana's VPL[1] does not require a homeowner insurer to pay for a loss caused by the excluded flood peril.[2]  Allstate argues that recovery of policy limits under the statute requires that the total loss be caused by a covered peril, such as wind.[3]

In Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007), the Court of Appeals for the Fifth Circuit concluded that "the VPL does not apply to a total loss not

---

[1]    The relevant portion of Louisiana's VPL provides:
Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

[2]    The Allstate policy excludes loss due to flood as follows:

We do not cover loss to the property described in Coverage A–Dwelling Protection, Coverage B–Other Structures Protection, and Coverage C–Personal Property Protection caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

[3]    Allstate argues that La. Rev. Stat. 22:695 does not apply to policies covering perils other than fire.  The Supreme Court of Louisiana addressed the issue in Landry v. Louisiana Citizens Property Ins. Co., ___ So.2d ___, 2008 WL 2151827 (La. May 21, 2008).  The Supreme Court noted that the "insurance industry has always assumed that the use of the term 'fire insurance policy' includes homeowners' policies."  The Supreme Court of Louisiana did not resolve the matter because the result was the same in Landry whether the statute applied or not, but urged the legislature to consider the issue and make changes to the language if needed.  Id. at n.10.  Similarly, in this case, the result is the same whether value policy law applies to losses from fire or other than fire.

caused by a covered peril."[4]  The Court of Appeals examined two possible meanings to the

language in the statute providing that "in the case of a total loss the insurer shall compute and

indemnify or compensate any covered loss of, or damage to, such property":

> 1) in the event of a total loss, an insurer is required to pay the homeowner the agreed
> full value of a policy as long as a covered loss causes some damage to the property,
> even if a non-covered peril renders the property a total loss; or (2) an insurer is only
> required to pay the homeowner the agreed face value of a policy when the property
> is rendered a total loss by a covered loss.

Id. at 239.  The Court of Appeals began the discussion regarding which interpretation of the

statute best conforms to the purpose of the law by examining the history of the VPL and its

operation as a form of liquidated damages.

> Valued policy laws or so-called total losses statutes dealing with Fire Ins. policies were
> enacted by many states in the late 1800's and early 1900's principally as a protective measure for
> insureds.  In general, these valued policy laws require that in case of total loss to an insured's
> property from certain specified perils, the amount stated in the policy declarations is considered
> the value of the structure at the time of loss and is payable in full.  In other words, if the value of
> property is less than the amount of insurance on a policy covering a building in a state having
> such a law, the insurer is precluded in most states from arguing that a lesser sum be paid, i.e.,
> actual cash value . . . .

>> The legislative intent of these laws was to prevent over-insurance and other
>> abuses, that is, to keep insurers and their representatives from writing insurance
>> on property for more than it is actually worth.

>> A second reason for valued policy laws is to encourage insurers and producers to
>> inspect risks and assist prospective insureds in determining insurable value of
>> properties . . . .  It follows that failure of an insurer to inspect a risk for valuation
>> purposes can lead to over-insurance and can produce a moral hazard as well.  In
>> other words, if a building is insured for more than its actual worth, an insured
>> might be indifferent about loss prevention.  This situation might even give an
>> insured an incentive to intentionally cause damage to his structure.

---

[4]    The Court of Appeals assumed for purposes of the opinion that the VPL applies to
non-fire perils.

Id.  (quoting <u>Atlas Lubricant Corp. v. Fed. Inso Co. of New Jersey</u>, 293 So.2d 550 (La. Ct. App. 1974)).  Based on the purpose of the VPL, the Court of Appeals concluded that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril."  <u>Id</u>.  "[A] total loss resulting from a non-covered peril does not trigger the VPL."  <u>Id</u>. n.23.  "[A] finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid."  <u>Id</u>.  Further, the Court of Appeals reasoned that the focus of the VPL is on valuation, not coverage; therefore "the statute signals no intent to expand coverage to excluded perils."  <u>Id</u>. at 240.

Although the Bradleys allege that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind or any other peril covered under the homeowner's policy.  Accordingly, there are no disputed issues of material fact, and Allstate is entitled to judgment as a matter of law that Louisiana's VPL does not apply.

**D.  La. Rev. Stat. 22:658**

Allstate moves for partial summary judgment on the issue of which version of La. Rev. Stat. 22:658, if any, applies to Bradley's claims for attorney's fees and penalties.   Allstate argues that the Bradleys' action for bad faith arose before the August 15, 2006, effective date of the amended statute, and the pre-amendment version of 22:658 in effect at the time the cause of action arose does not allow for recovery of attorney's fees and provides for penalties of 25% of proven damages.

After Hurricane Katrina, the legislature amended La. Rev. Stat. 22:658 by subjecting an insurer which fails to make payment within thirty days after written agreement or settlement to a penalty equal to 50% damages on the amount found to be due from the insurer and attorney's fees.  See Sher v. Lafayette Insurance Company, 2008 WL 928486 *8 (La. 2008).  The Supreme Court of Louisiana held that the "amendment is unquestionably substantive, and as such cannot be applied retroactively."  Id. at *11.

The Bradleys argue in favor of prospective application of the amended version of the statute as to a portion of their claim that arose after the August 15, 2006, effective date of the amendment.  "[A]n insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period."  Sher v. Lafayette Ins. Co., 2008 WL 928486 (La. 2008). Thus, an insurer may be subject to the penalties contained in the amendment if the claim arose after the effective date of the amendment.  Id.  Accordingly, the court concludes that, as to any claims that arose prior to August 15, 2006, the Bradleys' recovery of penalties under La. Rev. Stat. 22:658, if any, is limited to 25% of the amount found to be due under their homeowner's policy, and an award of attorney's fees is not available.  Allstate's motion for partial summary judgment on this issue is granted as a matter of law.  As to claims that may have arisen after the effective date of the amendment, Allstate's motion for partial summary judgment is denied.

New Orleans, Louisiana, this   25th day of July, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**