UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FELTON AND LUCILLE BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3748** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Allstate Insurance Company's motion for partial summary judgment on the issue of uncompensated losses for structural damage is **GRANTED**. (Document #50.)

**IT IS FURTHER ORDERED** that Allstate's motion for partial summary judgment on claims under La. Rev. Stat. 22:658 and 22:1220 related to the structural damage is **GRANTED**. (Document #51.)

**IT IS FURTHER ORDERED** that Allstate's motion for partial summary judgment on the issue of damages for mental and physical distress is **GRANTED**. (Document #49.)

### I. BACKGROUND

The residence of Felton and Lucille Bradley, located at 2637 Tennessee Street, New Orleans, Louisiana, sustained flood and wind damage as a result of Hurricane Katrina. The

property was insured under a homeowner's policy issued by Allstate Insurance Company (Allstate) with policy limits of $105,600 for the dwelling, $73,920 for the contents, and $10,560 for other structures.  The Bradleys notified Allstate of their loss and filed a claim.  Allstate sent a representative to evaluate and adjust the loss.

The Bradleys received the policy limits of $63,800 for structural damage, and $6,200 for contents from their flood insurer, Fidelity National Insurance Company.  Allstate has paid $41,339.06 for structural damage under a policy with a limit of $105,600, and $10,632 for contents.  Total payment received for structural damage under the homeowner's policy and flood policy thus far is $105,139.06.

The Bradleys viewed Allstate's calculation of the value of the loss as significantly less that the value of the damages and the necessary repairs.  The Bradleys filed a petition for damages and declaratory judgment in Civil District Court for the Parish of Orleans, State of Louisiana.  They allege that they are entitled to the total face amount of the homeowner's policy without deduction or offset, pursuant to Louisiana Value Policy Law (VPL), La. Rev. Stat. 22:695; Allstate breached the contract of insurance; and Allstate acted in bad faith.  Allstate removed the case to federal court based on diversity jurisdiction.  Allstate filed a motion for partial summary judgment on the issue of flood offset, a motion for summary judgment on the Bradleys' claims under Louisiana Value Policy Law (VPL), and a motion for partial summary judgment on the claims under La. Rev. Stat. 22:658.

On July 25, 2008, the court issued an order denying the motion for partial summary judgment on claims for uncompensated structural losses, granting the motion on claims under

Louisiana Value Policy Law, and granting in part and denying in part the motion on whether the pre-amendment version of La. Rev. Stat. 22.658 applies.

Allstate filed a motion for reconsideration of the denial of the motion for partial summary judgment on claims for uncompensated structural losses, a motion for partial summary judgment on claims under La. Rev. Stat. 22:658 and 22:1220 related to the structural damage, and a motion for partial summary judgment on the issue of damages for mental and physical distress.

## II. DISCUSSION

### A. Rule 60(b) motion

Allstate characterizes the motion for reconsideration as one brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  "[A] motion under Rule 60(b) cannot be filed until a final judgment has been entered."  Lambert v. McMahon, 2007 WL 713706 at *1 (5th Cir. 2007).  A judgment is final when it resolves all claims against all parties.  Southwest Louisiana Healthcare System, Inc. v. Argil, 281 Fed.Appx.326, 328 (5th Cir. 2008).  The denial of the motion for summary judgment on the claim for uncompensated loss is not a final judgment; therefore, this motion cannot be treated as a Rule 60(b) motion.

The motion is treated as a renewed motion for summary judgment.  There is no prejudice to the parties because the memoranda in support and in opposition to the motion for summary judgment incorporate arguments and exhibits from the original motion, and the new arguments are fully briefed.

### B. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to

3

the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## C. Breach of contract on claims for uncompensated loss

Allstate argued in a prior motion for summary judgment that there are no uncompensated losses because the plaintiffs have already recovered for structural damage a sum greater than the value of their home. Specifically, the Bradleys recovered $63,000 under the flood policy and $41,339.06 under the homeowner's policy for a total of $105,139.06. The court denied Allstate's motion for summary judgment because the evidence did not establish the value of the home, and there were disputed issues of material fact as to whether the Bradleys are seeking a

recovery of uncompensated, covered damage that does not exceed the value of their property.  In this renewed motion for summary judgment, Allstate reurges its argument and presents evidence to establish the value of the Bradleys' property.

"An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy."  Black v. First City Bank, 642 So.2d 151, 155 (La. 1994).  Insurance contracts against loss are contracts of indemnity.  See id.  An insured cannot recover an amount greater than the loss, and no double recovery is permitted.  See Johnson v. State Farm Fire & Cas. Co., 2008 WL 2178059 (E.D. La. 2008); see Cole v. Celotex Corp., 599 So.2d 1058, 1080 (La. 1992) ("As a general rule the claimant may recover under all available coverages provided that there is no double recovery.")(citing 15A Couch on Insurance 2d § 56:34 (1983)).  "When an insured has already received compensation for the full value of his or her property, he or she is not entitled to recharacterize as wind damage those losses for which he or she has already been compensated by previously attributing them to flood waters."  Id. (citing Wellmeyer v. Allstate Ins. Co., 2007 WL 1235042 at *3 (E.D. La. 2007)) (internal quotation omitted).   "A plaintiff whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss."  Id. (citing Weiss, 2007 WL 891869 at *2)).  "Plaintiffs are entitled to recover . . . any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, do not exceed the value of their property."  Id.

Allstate presents the Bradleys' deposition testimony regarding the value of their property.

Felton Bradley testified that the value of the home on Tennessee Street was between $85,000 and $95,000.  Lucille Bradley testified that the value of the home was $97,000.  Lucille Bradley's estimate is based on her recollection of an appraisal obtained by the Chase Bank when the Bradleys applied for a second mortgage on their home prior to Hurricane Katrina.  Allstate also presents an estimate of the pre-storm value of the home which it obtained from Murphy Appraisal Services.  Murphy concludes that the market value as of August 28, 2005, was $85,000.  The Bradleys present the report of an expert, Steve Hitchcock, who estimates the replacement cost to rebuild the house at $265,427.

The homeowner's policy provides for payment of a covered loss under Coverage A as follows:

> **5.  How We Pay for a Loss**
> Under **Coverage A - Dwelling Protection**, payment for covered loss will be one or more of the following methods:
> . . . .
>    b) Actual Cash Value.  If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis.  This means there may be a deduction for depreciation.  Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property regardless of the number of items involved in the loss.
>
> You may make a claim for additional payment as described in paragraph "c" . . . if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.
>
>    c) Building Structure Reimbursement.  Under **Coverage A–Dwelling Protection and Coverage B–Other Structures Protection**, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. . . .

> Building Structure Reimbursement will not exceed the smallest of the following amounts:
> 1) the replacement cost of the part(s) of the building structure(s) for equivalent construction for similar use on the same premises;
> 2) the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or
> 3) the limit of liability applicable to the building structure(s) as shown on the Policy Declarations for Coverage A-Dwelling Protection or Coverage B-Other Structures Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

The Bradleys have not rebuilt their home or designated another home as a replacement property. Felton Bradley testified that he intends to rebuild the home on Tennessee Street in the future. Meanwhile, the Bradleys purchased a home on Corinne Street in New Orleans East for $137,500 with a loan of $128,000 from the Small Business Administration (SBA). The mortgage on the property on Tennessee Street was paid off with the insurance proceeds from the flood policy and from the homeowner's policy. The remainder was used as a down payment on the Corinne house.

The Bradleys received $49,000 from the Road Home Program. Road Home appraised the home on Tennessee Street at $77,000, but advised Lucille Bradley that she would receive additional funds if she could produce the Chase appraisal of $97,000. In accepting the Road Home funds, the Bradleys agreed to rebuild their home on Tennessee Street within three years. Lucille Bradley testified that she has not used the Road Home funds for any other purpose.

Because the Bradleys have not rebuilt or replaced their property, the measure of recovery

is the actual cash value, not building structure reimbursement.[1]  There are no disputed issues of material fact that the actual cash value of the structure does not exceed $97,000.  The Bradleys have received $105,139.06 from flood and homeowner's coverages, which represents compensation for the full value of their property.

Accordingly, the Bradleys have not put forth evidence of uncompensated losses for structural damage under their homeowner's policy that do not exceed the value of their property.  There are no disputed issues of material fact, and Allstate is entitled to judgment as a matter of law on the issue of uncompensated loss for damage to the dwelling.

**D.  Claims for statutory penalties under La. Rev. Stat. 22:658 and 22:1220**

Allstate contends that the Bradleys are not entitled to statutory penalties and attorney's fees related to payment for structural damage because the Bradleys have received an amount in excess of the full pre-storm value of the property.  A plaintiff attempting to base a theory of recovery against an insurer on La. Rev. Stat. 22:658 and 22:1220, "must first have a valid, underlying, substantive claim upon which insurance coverage is based."  Clausen v. Fidelity and Deposit Co. of Maryland, 660 So.2d 83, 85 (La. Ct. App. 1995).  "The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying, insurance claim."  Id.  "This reflects the general principle that statutes allowing for the imposition of penalties must be strictly construed."  Id. at 86.

The Bradleys have not carried their burden of establishing a valid, underlying breach of

---

[1] The parties have not presented the issue of whether the Bradleys are eligible for additional payment under the terms of the homeowner's policy if they rebuild their home.

contract claim as to payment for their structural damage.  Therefore, Allstate's motion for partial summary judgment on uncompensated losses for damage to the structure is granted.  See Estate of Nicholson v. Farmers Ins. Co., 555 F.Supp.2d 671, 676 (E.D. La. March 20, 2008).

### E.  Claim for mental anguish and emotional distress

Allstate contends that there is an absence of evidence that the Bradleys suffered mental anguish or emotional distress related to the handling of their homeowner's insurance claim for structural damage.  Allstate argues that Felton Bradley testified that he had no memory of any dealings with Allstate, and Lucille Bradley had no dealings with Allstate regarding the claim.  Further, Allstate argues that, because the Bradleys have not established bad-faith "claims handling" of their claim for structural damage, they cannot establish that bad faith was the cause of any alleged mental anguish and emotional distress.

"[I]n order to recover for mental anguish, there must be evidence of the breach by the insurer and the intent to aggrieve the plaintiff."  Veade v. Louisiana Citizens Property Corp., 985 So.2d 1275, 1280 (La. Ct. App. 2008) (citing La. Rev. Stat. 22:1220 and La. Civ. Code Art. 1998).  In the opposition to the motion for summary judgment, the Bradleys argue in a conclusory manner that there are disputed issues of fact which preclude partial summary judgment; however, they do not put forth evidence of mental anguish and emotional distress to present an issue for trial.  Accordingly, Allstate's motion for partial summary judgment on this issue is granted.

### III. CONCLUSION

Allstate's motion for partial summary judgment on the breach of contract claim related to

structural damages is granted.  The Bradleys have not put forth evidence that there are uncompensated losses that are covered under the homeowner's policy and which, when combined with their flood proceeds, do not exceed the full value of the property.  Because they have not carried their burden on the underlying breach-of-contract claim, the motion for partial summary judgment on the claim for statutory penalties and attorney's fees is granted.  The Bradleys have not put forth evidence that there is an issue for trial on the claim for mental anguish and emotional distress, and Allstate's motion for partial summary judgment is granted.

New Orleans, Louisiana, this   2nd   day of December, 2008.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE