UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FELTON AND LUCILLE BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3748** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "S" (3)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Allstate Insurance Company's Motion for Summary Judgment (Doc. #154) is **DENIED**, as to plaintiffs' claims for breach of contract for uncompensated structural damage to the dwelling. The motion is **GRANTED**, as to plaintiffs' bad faith claims related to their breach of contract claims for uncompensated damage to the dwelling, and those claims are **DISMISSED WITH PREJUDICE**.

BACKGROUND

On August 29, 2005, Felton[1] and Lucille Bradley owned and resided in a home located at 2637 Tennessee Street, New Orleans, Louisiana. The property was insured under a homeowners policy issued by Allstate Insurance Company with policy limits of $105,600 for the dwelling, $73,920 for the contents, and $10,560 for other structures. The Allstate homeowners policy specifically excluded flood damages. The property was also insured under a flood policy issued by Fidelity National Insurance Company with limits of $63,800 for the dwelling, and $6,200 for the contents.

---

[1] Since the suit was filed, Felton Bradley died, and Lucille Bradley, as executrix of the Estate of Felton Bradley, has been substituted as a plaintiff in this action.

The property was destroyed by a combination of wind and flood during Hurricane Katrina. On September 1, 2005, the Bradleys notified Allstate of the loss and filed a claim. After inspecting and adjusting the loss, Allstate paid $41,339.06 for structural damage to the dwelling and $10,632 for the contents. Additionally, Fidelity paid the policy limits of $63,800 for structural damage to the dwelling, and $6,200 for the contents. Therefore, the total insurance payment the Bradleys received for structural damage to their dwelling under the homeowners and flood policies was $105,139.06.

On May 30, 2007, the Bradleys filed this suit against Allstate in the Civil District Court for the Parish of Orleans, State of Louisiana. Allstate removed the case to the United States District Court for the Eastern District of Louisiana. The Bradleys alleged that Allstate breached the insurance contract, acted negligently and in bad faith, and that they were entitled to the full policy limits under their homeowners policy without deduction or offset pursuant to Louisiana's Value Policy Law ("VPL"). The Bradleys sought to recover the policy limits under their homeowners policy, because their home was a total loss; additional funds for loss of personal property under their contents coverage; additional living expenses; damages for mental anguish and emotional distress; and damages for Allstate's alleged bad faith in handling their claim pursuant to Louisiana Revised Statutes §§ 22:1220 and 22:658.[2]

---

[2] On January 1, 2009, Louisiana Revised Statutes §§ 22:658 and 22:1220 were renumbered sections 22:1892 and 22:1913, respectively. Because plaintiffs' allegations and the majority of the case law interpreting the statutes reference the former statute numbers, for ease of reference, the court will use the former numbers herein.

The district court ultimately summarily awarded the Bradleys additional living expenses, and dismissed all of their other claims. The district court held that the Bradleys were entitled to the actual cash value ("ACV") of their home, which the court equated to the pre-storm market value of $97,000. (The district court found that because that value was less than the amount the Bradleys received under their homeowners and flood policies combined ($105,139.06), they were not entitled to further recovery for damage to their dwelling.) The district court dismissed the VPL claim because there was no allegation that the total loss was caused by wind or another peril covered under the homeowners policy. The district court dismissed the Bradleys' claims for loss of personal property and mental and emotional distress because of a lack of evidence. Also, the district court dismissed the bad faith claims because it found that Allstate fully paid the Bradleys under the homeowners policy, and therefore, there was no valid, underlying, substantive claim.

The Bradleys appealed to the United States Court of Appeals for the Fifth Circuit arguing that the district court erred in granting summary judgment because: (1) the court did not apply the plain language of the homeowners policy providing for payment of policy limits in the event of a total loss; (2) did not use the proper measure of value to determine the scope of their recovery; (3) improperly permitted Allstate to offset payments under the homeowners policy with payments from their flood insurer; (4) failed to consider the weight of the evidence regarding lost personal property and additional living expenses; and (5) wrongly dismissed their bad faith, mental anguish, and emotional distress claims.

The United States Court of Appeals for the Fifth Circuit affirmed the district court's rulings regarding lost personal property and additional living expenses and the bad faith claims associated

therewith. Bradley v. Allstate Ins. Co., 620 F.3d 509, 528 (5th Cir. 2010). The appellate court reversed the district court's holdings regarding the Bradley's breach of contract and the related bad faith claims for uncompensated structural damage to the dwelling. Id. The appellate court held that the district court should have interpreted the section 5(e)[3] total loss provision of the homeowners

---

[3] Section 5 of the Allstate homeowners policy provides in pertinent part:

    5. How We Pay for a Loss

    Under Coverage A-Dwelling Protection, payment for covered loss will be by one or more of the following methods:

        *   *   *

    b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property regardless of the number of items involved in the loss.

        *   *   *

    e) In the event of the total loss of your dwelling and all attached structures covered under Coverage A - Dwelling Protection, we will pay the limit of liability shown on the Policy Declarations for Coverage A- Dwelling protection.

The Coverage A Dwelling Protection section of the Allstate homeowners policy provides:

    Property We Cover Under Coverage A:

    1. Your dwelling including attached structures. Structures connected to your dwelling by only a fence, utility line, or similar connection are not considered attached structures.

        *   *   *

    Losses We Cover Under Coverages A and B:

    We will cover sudden and accidental direct physical loss to property described in Coverage A-Dwelling Protection and Coverage B-Other Structures protection except as

policy, instead of relying on the section 5(b) ACV provision. Id. The appeallate court instructed that on remand, the district court "must evaluate whether a 'covered loss' predominantly caused the damage to the Bradleys' property." Id. The appellate court also held that the appropriate method of calculating ACV is the replacement cost minus depreciation. Id. Further, the appellate court vacated the district court's granting of summary judgment on the Bradleys' bad faith claims under La. Rev. Stat. §§ 22:658 and 22:1220.

After the case was remanded to the United States District Court for the Eastern District of Louisiana, Allstate filed a motion for summary judgment in which it argues that the Bradleys are not entitled to further recovery because the amount they were paid under their homeowners and flood policies combined ($105,139.06) is more their the ACV of the property. Allstate contends that its appraisal expert, Chris Smiroldo, submitted an evaluation of ACV in which he found that the replacement cost was $141,650, and the depreciation was $47,212, resulting in an ACV of $96,438.

---

limited or excluded by this policy.

Losses We Do Not Cover Under Coverages A and B:

We do not cover loss to the property described in Coverage A-Dwelling Protection or Coverage B-Other Structures Protection consisting of or caused by:
1. Flood, including, but not limited to surface water, waves, tidal water or overflow or any body of water, or spray from any of these, whether or not driven by wind.

\* \* \*

23. We do not cover loss to covered property described in Coverage A-Dwelling Protection or Coverage B-Other Structures Protection when:

    a) there are two or more causes of the loss to the covered property; and

    b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above.

Allstate argues that the Bradleys do not have any admissible evidence regarding ACV to controvert Smiroldo's opinion. The Bradleys' appraisal expert, Stephen Hitchcock has opined that the replacement cost of the home was $265,427, but he has not offered an admissible opinion regarding depreciation. Therefore, Allstate argues that it is uncontested that the ACV of the Bradleys' home is $96,438, which is less than the amount that they have received under their homeowners and flood policies combined ($105,139.06), and they are not entitled to any further recovery pursuant to Louisiana's rule against double recovery.

The Bradleys argue that there are contested issues of fact regarding the ACV that preclude summary judgment. Specifically, the Bradleys argue that there is a dispute regarding the replacement cost because Hitchcock opined that it was $265,427, whereas Smiroldo opined that it was $141,650. The Bradleys argue that if they accept Smiroldo's depreciation evaluation, the ACV is $218,215. Further, the Bradleys submitted an affidavit by Hitchcock in which he opined that the deprecation rate for the property could be from 0% to 15%.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The

non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Allstate's Motion for Summary Judgment Regarding the Bradleys' Breach of Contract Claim for Uncompensated Structural Damage to the Dwelling**

When the United States Court of Appeals for the Fifth Circuit remanded this matter to the United States District Court for the Eastern District of Louisiana, it stated that the district court must evaluate whether the Bradleys' loss was predominately caused by a covered peril and ascertain the applicability of the section 5(e) total loss provision. Bradley, 620 F.3d at 520, 525. Specifically, the court held that the section 5(e) total loss provision applies only when the total loss is caused by a covered peril, and that because the Bradleys' property was destroyed by a combination of a covered peril (wind) and a non-covered peril (flooding), pursuant to section 23, there is a consented issue of fact regarding whether wind or flood was the predominant cause of the loss. Id. at 520. If wind was the predominant cause of the loss, the section 5(e) total loss provision applies and the Bradleys are entitled to recover their policy limits. Id. at 525. Conversely, if flooding was the predominant cause of the loss, the Bradleys are entitled to recover the ACV under section 5(b), which is "computed as the cost of replacing the building as it existed at the time of the accident, taking into

account the replacement costs within a reasonable time after the accident, minus depreciation." Id. at 520, 525.

The appellate court also held that, regardless of whether section 5(e) or 5(b) applies, the Bradley's recovery is subject to Louisiana's bar against double recovery. Id. at 525. Under Louisiana law, "while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified." Id. at 521 (quoting Cole v. Celotex, 599 So.2d 1058, 1080 (La. 1992)). The appellate court found that the Bradleys' "actual loss" is measured by the ACV of the property because they did not repair, rebuild, or replace the property within two years as permitted under the policy and Louisiana law. Id. at 522. Therefore, the Bradleys "are entitled to recover any previously uncompensated losses that are covered by their homeowners policy and which, when combined with their flood proceeds, do not exceed" the ACV of their property. Id. at 523. The appellate court directed that "[u]pon remand the fact-finder must arrive at the proper figure for ACV to establish the amount of actual loss." Id. at 525. The Bradleys can receive additional compensation under their homeowners policy if their combined recovery under their homeowners and flood policies is less than their ACV. However, "by the explicit terms of the contract, Allstate is liable for no more than the stated policy limits regardless of the extent of the Bradleys' loss."[4] Id. Further, whether the Bradleys' potential recovery is under section 5(e) or 5(b), Allstate may make deductions for excluded losses, but

---

[4] Allstate paid $41,339.06 for damage to the structure of the Bradleys' dwelling under their homeowners policy. Allstate's policy limit for the dwelling is $105,600. Therefore, the Bradleys are, at most, potentially entitled to an additional $64,260.94 under this coverage.

8

Allstate bears the burden of establishing how much of the total loss is attributable to flood damage. Id. (citing Dickerson v. Lexington Ins. Co., 556 F.3d 290, 295 (5th Cir. 2009).

Allstate argues that it is entitled to summary judgment because its has submitted the only expert opinion on ACV ($96,438), and that figure is less than the Bradleys' combined recovery under their homeowners and flood policies ($105,139.06). Allstate and the Bradleys submitted differing expert opinions regarding the cost of replacing the Bradleys' home. Allstate's expert, Smiroldo, opined that the replacement cost is $141,650, while the Bradleys' expert, Hitchcock, opined that the replacement cost is $265,427. Because there is a genuine issue of material fact regarding the replacement cost, which must be used in determining ACV, Allstate is not entitled to summary judgment on the Bradleys' breach of contract claims regarding uncompensated structural damage to the dwelling.

**C.**     **Allstate's Motion for Summary Judgment Regarding the Bradleys' Bad Faith Claims Related to Their Breach of Contract Claim for Uncompensated Structural Damage to the Dwelling**

Allstate argues that the Bradleys' bad faith claims related to their breach of contract claim regarding uncompensated structural damage to the dwelling should be dismissed because it had a reasonable basis to defend against the claim based on a dispute about the amount of the Bradleys' actual loss. Allstate argues that the dispute is a disagreement about the value of the loss and whether the Bradleys are entitled to further recovery in light of Louisiana's prohibition against double recovery.

La. Rev. Stats. §§ 22:1220 and 22:658 penalize insurers who arbitrarily and capriciously fail to pay legitimate claims.[5] To recover penalties under La. Rev. Stats. §§ 22:1220 and 22:658, a claimant must submit a satisfactory proof of loss and show that the insurer failed to pay the claim within either 30 or 60 days without probable cause or in an arbitrary and capricious manner. See La. Rev. Stats. §§ 22:1220 and 22:658. The insured is not required to prove the exact amount of his or her damage, but the insurer is not required to pay all of the insured's claim within the statutory period to avoid bad faith penalties. Louisiana Bag Co., Inc. v. Audubon Indem. Co., 999 So.2d 1103, 1114-16 (La. 2008). Instead, if the extent of the loss is contested, the insurer must pay only the "undisputed portion" of the claim, or "the reasonable amount which is due." Id. (citing McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1091 (La. 1985)). Therefore, "[a] refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute had a good faith basis." Dickerson v. Lexington Ins. Co., 556 F.3d at 299.

La. Rev. Stats. §§ 22:1220 and 22:658 are strictly construed because they are penal in nature. McDill, 475 So.2d at 1092. The insured bears the burden of proof, and the penalties imposed by the statutes "are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." Reed, 857 So.2d at 1021 (emphasis added). Penalties and attorneys fees should be imposed only "when the facts 'negate probable cause for nonpayment.'" La. Bag, 999 So.2d at 1114 (quoting Gillory v. Travelers Ins. Co., 294 So.2d 215, 217 (La. 1974)).

---

[5] In Reed v. State Farm Mut. Auto. Ins. Co., 857 So.2d 1012 (La. 2003), the Supreme Court of Louisiana noted that La. Rev. Stats. §§ 22:1220 and 22:658 incorporate the same standard and prohibit the same conduct. Thus, the cases interpreting the two statues are used interchangeably.

Because the insured bears the burden of proving bad faith, the Bradleys must set forth specific facts indicating that a genuine issue of material fact exists. See Reed, 857 So.2d at 1021; see also Celotex, 106 S.Ct. 2553-54.  Allstate was not arbitrary, capricious, or without probable cause in refusing to pay the disputed amounts for structural damage to the Bradleys' dwelling. Allstate paid $41,339.06 for structural damage under the homeowners insurance policy and Fidelity paid $63,800 for structural damage under the flood insurance policy.  The combined payment for structural damage from the two insurers equals $105,139.06, which is only $460.94 less than the Allstate homeowners insurance policy limit.  Louisiana law does not permit the Bradleys to recover twice for the same damage, and the parties dispute the ACV of the property.  Allstate has paid the uncontested amounts and has a good faith basis for not paying the disputed amounts. Therefore, Allstate is entitled to summary judgment on the Bradleys' bad faith claims related to their breach of contract claims for uncompensated structural damage to the dwelling.

## CONCLUSION

**IT IS HEREBY ORDERED** that Allstate Insurance Company's Motion for Summary Judgment (Doc. #154) is **DENIED**, as to plaintiffs' claims for breach of contract for uncompensated structural damage to the dwelling.  The motion is **GRANTED**, as to plaintiffs' bad faith claims related to their breach of contract claims for uncompensated damage to the dwelling, and those claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this ___13th___ day of May, 2011.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**